[S. F. No. 12047.   In Bank.—March 15, 1927.]

PERKINS MANUFACTURING COMPANY (a Corporation), Petitioner, v. FRANK C. JORDAN, as Secretary of State, etc., Respondent.

[1] CORPORATIONS — LICENSE TAX — CONSTITUTIONAL LAW. — The provisions of the Corporation License Tax Act of this state requiring foreign corporations to pay an annual license fee, which fee is in nowise regulated by either the amount of property owned, capital employed, or business done within the state, but is

----

1.  Excise tax on foreign corporations engaged exclusively in interstate commerce measured by net income from business within taxing state, note, 44 A. L. R. 1228.

predicated solely upon the authorized capital stock of the corporation, is violative of the commerce clause and the fourteenth amendment to the constitution of the United States, in that it lays an unwarranted burden upon interstate commerce, taxes properly outside the state over which the state of California has no jurisdiction, and denies to persons within the jurisdiction of California equal protection of the laws.

[2] ID. — VALIDITY OF LICENSE TAX LAW — STATUTE. — In order that an act proposing a license fee upon foreign corporations desiring to transact intrastate business in this state be valid the tax must bear at least some relation to property owned and used and business carried on or proposed to be carried on within the state of California.

[3] ID.—FILING FEES — PRIVILEGE OR EXCISE TAX — TESTS.—The contention cannot be maintained that a different principle may apply in the case of filing fees graded on authorized capital than in the case of a privilege or excise tax based upon authorized capital. The effect upon interstate commerce and upon equal protection of the law to persons in the several states is the test, and neither the name nor the aim of the state tax can suffice to prevent consideration of the necessary effect and consequences of the state statute.

[4] ID.—MEASURE OF TAX—AUTHORIZED CAPITAL.—The authorized capital stock of a foreign corporation is not a proper foot rule for measuring license tax fees required to be paid by the corporation.

[5] ID.—LICENSE TAX FEE — SEVERABLE PROVISIONS OF ACT — MANDAMUS.—The provisions of the corporation license tax act of this state with regard to the license fee of foreign corporations is severable from the other provisions of the act and *mandamus* is the proper remedy to test the validity of such provisions.

---

(1) 12 **C. J.**, p. 104, n. 81, p. 110, n. 39, p. 111, n. 41, p. 1155, n. 68; 15 **C. J.**, p. 931, n. 82, p. 932, n. 83, 84, p. 933, n. 85; 37 **C. J.**, p. 207, n. 80; 37 Cyc., p. 861, n. 17.   (2) 12 **C. J.**, p. 103, n. 75, p. 109, n. 16, 20, 23, p. 110, n. 24; 37 Cyc., p. 860, n. 4.   (3) 12 **C. J.**, p. 109, n. 16.   (4) 4 **C. J.**, p. 649, n. 36; 37 Cyc., p. 861, n. 17. (5) 38 **C. J.**, p. 667, n. 71; 36 Cyc., p. 976, n. 27, p. 982, n. 47.

APPLICATION for a Writ of Mandamus to compel the Secretary of State to issue to a foreign corporation a certificate to do business in this state. Writ granted.

The facts are stated in the opinion of the court.

---

2. Validity of tax on foreign corporations, note, 60 L. R. A. 679. See, also, 7 **Cal. Jur.** 234; 12 R. C. L. 60.

Willard P. Smith and Reuben G. Hunt for Petitioner.

U. S. Webb, Attorney-General, and Frank L. Guerena, Deputy Attorney-General, for Respondent.

Dunne, Dunne & Cook, *Amici Curiae.*

PRESTON, J.—The state of California by the act of May 10, 1915 (Stats. 1915, p. 422), and several subsequent acts amendatory and supplementary thereto (Deering's Gen. Laws 1923, Act 1743, p. 548), put into effect a comprehensive plan regulating and governing the right of foreign corporations to transact intrastate business therein.

The act requires the filing with the Secretary of State by the corporation of an authenticated copy of its charter, together with payment of a certain filing fee therefor; also the filing of an affidavit showing the authorized capital stock of said corporation on January 1st of the current year; also the designation of a resident agent in said state upon whom service of process may be had. The act then further provides for the payment of an annual license tax or fee as follows:

"Sec. 3.   Except those corporations hereinafter specified, every corporation incorporated under the laws of this state, and every corporation incorporated under the laws of any other state, territory, or foreign country now doing intrastate business within this state, or which shall hereafter ·engage in intrastate business within this state, shall procure annually from the secretary of state a license authorizing the transaction of such business in this state, and pay therefor the license tax prescribed herein.

"For the purpose of measuring said tax the secretary of state shall examine all articles of incorporation and all documents on file in his office relating to an increase or decrease in the authorized capital stock of corporations which are subject to said tax, and determine the amount due from each corporation by the following rule:

"When the authorized capital stock of the corporation does not exceed ten thousand dollars, the tax shall be ten dollars; when the authorized capital stock exceeds ten thousand dollars, but does not exceed twenty thousand dollars, the tax shall be fifteen dollars; when the authorized capital

stock exceeds twenty thousand dollars but does not exceed fifty thousand dollars, the tax shall be twenty dollars; when the authorized capital stock exceeds fifty thousand dollars but does not exceed one hundred thousand dollars, the tax shall be twenty-five dollars; when the authorized capital stock exceeds one hundred thousand dollars but does not exceed two hundred fifty thousand dollars, the tax shall be fifty dollars; when the authorized capital stock exceeds two hundred fifty thousand dollars but does not exceed five hundred thousand dollars, the tax shall be seventy-five dollars; when the authorized capital stock exceeds five hundred thousand dollars but does not exceed one million dollars, the tax shall be one hundred dollars; when the authorized capital stock exceeds one million dollars but does not exceed three million dollars, the tax shall be two hundred dollars; when the authorized capital stock exceeds three million dollars but does not exceed five million dollars, the tax shall be three hundred fifty dollars; when the authorized capital stock exceeds five million dollars, but does not exceed seven million five hundred thousand dollars, the tax shall be five hundred fifty dollars; when the authorized capital stock exceeds seven million five hundred thousand dollars but does not exceed ten million dollars, the tax shall be eight hundred dollars; when the authorized capital stock exceeds ten million dollars, the tax shall be one thousand dollars; when the capital stock of any corporation has no par value the tax shall be one hundred dollars; when a part of the capital stock of any corporation has a par value and a part of such stock has no par value, the tax shall be computed upon such par value stock in accordance with the admeasurement schedule herein established, to which sum shall be added the sum of fifty dollars. Building and loan companies and associations shall pay an annual license tax of ten dollars.

"All corporations having no capital stock, but organized for profit shall pay an annual tax of ten dollars. Said license tax shall be due and payable to the secretary of state on the first day of January of each and every year. Such license tax shall be paid on or before the hour of six o'clock P. M. of the first Monday of February of each year and if not so paid shall at said hour become delinquent and there shall thereupon be added thereto as a penalty for such delinquency the sum of ten dollars."

The act also provides penalties for failure to pay the license fee within the time prescribed by law and for persistent failure provides for a forfeiture of its right to transact business within the state. It also makes it a misdemeanor to carry on business within the state after such right has been forfeited and perhaps some other penalties.

The proceeding before us involves the validity of said above-quoted provision requiring the payment of the annual license fee. It will be noted that this fee is in nowise regulated by either the amount of property owned, capital employed or business done within the state. Indeed, it bears no relation whatever to the property owned, capital employed, or business volume of the corporation either in or out of the state or at all. The tax is predicated solely upon the authorized capital stock of the corporation and is wholly without relation to any other standard. Again, the corporation thus taxed may never issue the amount of stock authorized and, if it does, it may employ the whole thereof in its business elsewhere than in California. A corporation with a small amount of authorized capital stock may be doing an immense business in California and be required to pay only a small privilege tax, whereas, on the other hand, a corporation with a large authorized capital stock may be doing an insignificant amount of business in California and under this act be required to pay a larger privilege tax. Further, two corporations may be doing an equal amount of business in California; one with an authorized capital of $100,000 dollars would be required to pay a tax of $25, while the other with an authorized capital of $1,000,000 would be required to pay a tax of $100 for no greater privilege.

Petitioner asserts the invalidity of that portion of said act above quoted in an original proceeding in mandate against respondent as Secretary of State, alleging substantially as follows:

(a) That it is a foreign corporation duly organized and existing under the laws of the state of Minnesota, with its principal place of business at St. Paul therein.

(b) That it is engaged in the business of manufacturing, selling, and installing wood and metal doors, ornamental iron, wire goods, structural steel, and sheet metal products, including especially steel rolling doors, tinclad doors and

similar products, and is carrying on such trade in both interstate and intrastate commerce throughout the country.

(c) That it has an authorized capital stock of $50,000, with, however, only $20,000 thereof issued and outstanding, which said latter amount represents the total investment in said business.

(d) That as a part of its interstate business it is advisable and financially advantageous to it to carry on in several states intrastate business as well as interstate business, which said intrastate business is inseparably and inextricably interwoven with its interstate business.

(e) That the amount of capital employed in California does not exceed one-half of one per cent of its total invested capital.

(f) That desiring to qualify for the transaction of intrastate business in the state of California it did on April, 1, 1926, offer to comply with said above-mentioned act, known as the Corporation License Act, by tendering to the Secretary of State a certified copy of its charter, with regular filing fee therefor, affidavit as to authorized capital stock and designation of a resident agent, and offered to comply with all other provisions of said act applicable thereto, save and alone the payment of the sum of $15 claimed by said respondent as such Secretary of State as a license fee under the above-quoted provision of said act.

Respondent by admission or insufficient denial conceded the existence of the foregoing facts, but refused to accept said copy of charter and other documents tendered or to allow same to be filed or to otherwise allow petitioner to qualify for intrastate business unless and until it paid the said license tax. The pleadings, proof, and admission of facts above noted bring squarely before us the validity of said provision requiring an annual license fee when tested by the commerce clause of and the fourteenth amendment to the constitution of the United States.

Of course, it requires no debate nor review of authorities to hold that the plain duty of this court is to speedily mold its rulings in conformity with the decisions of the supreme court of the United States upon these subjects. The strength and stability of our federation of states lie in our non-interference with the constitutional powers which have been specially ceded to the central government. It was upon this

very point that the Articles of Confederation were weak and the condition was remedied by the commerce clause, the fourteenth amendment, and other powers which have been reposed by the constitution exclusively in the federal government.

Unfortunately for respondent in this case, the supreme court of the United States has squarely and plainly spoken on the subject before us and has promulgated the following canons of interpretation:

"In cases involving the validity of laws of a state imposing license fees or excise taxes on corporations organized in another state, this court has decided:

" '1. The power of a State to regulate the transaction of a local business within its borders by a foreign corporation,—meaning a corporation of a sister State,—is not unrestricted or absolute, but must be exerted in subordination to the limitations which the Constitution places on state action.

" '2. Under the commerce clause exclusive power to regulate interstate commerce rests in Congress, and a state statute which either directly or by its necessary operation burdens such commerce is invalid, regardless of the purpose with which it was enacted.

" '3. Consistently with the due process clause, a State cannot tax property belonging to a foreign corporation and neither located nor used within the confines of the State.

" '4. That a foreign corporation is partly, or even chiefly engaged in interstate commerce does not prevent a State in which it has property and is doing a local business from taxing that property and imposing a license fee or excise in respect of that business, but the State cannot require the corporation as a condition of the right to do a local business therein to submit to a tax on its interstate business or on its property outside the State.

" '5. A license fee or excise of a given percent. of the entire authorized capital of a foreign corporation doing both a local and interstate business in several states although declared by the State imposing it to be merely a charge for the privilege of conducting a local business therein, is essentially and for every practical purpose a tax on the entire business of the corporation, including that which is interstate, and on its entire property, including that in other States; and this because the capital stock of the corpora-

tion represents all its business of every class and all its property wherever located.'" (*International Paper Co.* v. *Massachusetts*, 246 U. S. 135, 141 [Ann. Cas. 1918C, 617, 62 L. Ed. 624, 38 Sup. Ct. Rep. 292, 294, see, also, Rose's U. S. Notes Supp.]; *Airway Elec. Appliance Corp.* v. *Day*, 266 U. S. 71 [69 L. Ed. 169, 45 Sup. Ct. Rep. 12].)

[1] Petitioner insists that the provision of the Corporation License Act in question is clearly violative under the above specifications of both the commerce clause and the fourteenth amendment in that it lays an unwarranted burden upon interstate commerce; taxes property outside the state over which the state of California has no jurisdiction; and denies to persons within the jurisdiction of California the equal protection of the laws. Clearly, there is no escape from this conclusion. Indeed, the case of *Airway etc. Corp.* v. *Day, supra,* seems squarely to decide these very questions. There a law of the state of Ohio was under test, the germane provisions of which were as follows:

"Section 5503 (enacted May 31, 1911), imposes an annual fee required of foreign corporations having capital stock with par value as follows: 'On or before October fifteenth, the auditor of state shall charge for collection, as herein provided, annually, from such company, in addition to the initial fees otherwise provided for by law, for the privilege of exercising its franchises in this state, a fee of three-twentieths of one per cent. upon the proportion of the authorized capital stock of the corporation represented by the property owned and used and business transacted in this state. . . . '

"An act of May 17, 1921 (secs. 8728–11, General Code of Ohio), provides: ' . . . The amount of fees payable by a foreign corporation having common stock without par value . . . under section 5503 shall be three-twentieths of one per cent. upon the proportion of the authorized preferred stock represented by property owned and used and business transacted in this state and five cents per share upon the proportion of the number of shares of authorized common stock, represented by property owned and used and business transacted in this state. . . . '" (*Airway etc. Corp.* v. *Day, supra,* pp. 78, 79.)

It will be noted that this Ohio statute makes a pretense at least of setting up a standard bearing some relation to prop-

erty owned and used and business done within said state. In the case before us we have not even this consolation for, as above noted, the act has as its only measure the authorized capital stock of the corporation, regardless of the property owned and used or business done within the state of California.

The facts in the Ohio case were as follows: Plaintiff was incorporated under the laws of Delaware, with an authorized capital stock of 400,000 shares without par value, one-half of which was common stock and the other half founders' stock. The only difference between the two classes of stock was the voting power thereof. The corporation obtained from the secretary of the state of Ohio, in conformity with its laws, a certificate of admission to do business in that state, and it also paid the initial fee for the privilege of there exercising its franchise. It also had a certificate from the commissioner of securities of said state authorizing it to sell its stock therein. It acquired two large manufacturing plants at Toledo and commenced the business of manufacturing electrical household appliances and selling them in intrastate and interstate commerce. It had issued only 50,485 shares of stock, of which 10,010 shares were common and 40,475 were founders' stock. All of its property, valued at $458,278.56 was located in Ohio and the amount of business transacted the preceding year was $250,951.58. The admitted value of the stock was $7 per share. An annual license fee of $20,000 was demanded and by reason of the intrastate business as distinguished from the entire business transacted, it was reduced to $14,926. In other words, instead of being calculated on 400,000 shares, it was calculated on 298,520 shares, the first charge being about eight times the issued capital stock, and the latter amount being six times the issued capital stock.

The supreme court of the United States, without dissent on the part of any member thereof, declared this law invalid, using in part the following language:

"All plaintiff's business, intrastate and interstate, and all its property wherever located were represented by the 50,485 shares of stock outstanding. The annual fee demanded by the state officers is five cents per share on 400,000 shares, and that fixed by the lower court is based on 298,520 shares. The inevitable effect of the act is to tax and directly burden

interstate commerce of foreign corporations permitted to do business in Ohio, and engaged in interstate commerce, wherever the number of shares authorized, subject to the charge of five cents each, exceeds the number of outstanding shares attributable to or represented by the corporations, property and business in that state. In this case, the fee fixed by the commission was based on nearly eight times the number of outstanding shares and that determined by the court on nearly six times that number. As some of the outstanding shares are represented by plaintiff's interstate business, the application of the rate to all the shares, or to a number greater than the total outstanding, necessarily amounts to a tax and direct burden upon all the property and business including the interstate commerce of the plaintiff. (*International Paper Co.* v. *Massachusetts, supra,* 142.) We hold that the act violates the commerce clause.

"The fee determined by the lower court, as well as that fixed by the state officers, is arbitrary. Without holding that such a charge must be measured by the value of the privilege for which it is imposed, it may be said that some relation to such value is a reasonable requirement. . . . The number of nonpar value shares of the corporation is not an indication of, and does not purport to be a representation as to, the amount of its capital. Each outstanding share represents merely an aliquot part of its assets. The number of shares not subscribed or issued has no relation to the privilege held by plaintiff in Ohio, and is not a reasonable measure of such a fee. Such shares may never be subscribed or issued, or additional shares may be issued to acquire property or do business in other states or to carry on interstate commerce. Plainly the fee, to the extent that it is based on a number of shares in excess of those outstanding, has no relation to what was paid in for the stock or to its value or to the amount of plaintiff's capital, its property or its business, intrastate in Ohio or interstate. The act in its practical operation does not require like fees for equal privileges held by foreign corporations in Ohio under the same circumstances. Unless, under the laws of the states where organized they chance to be authorized to issue the same number of nonpar value shares, the annual franchise fees imposed on foreign corporations having the same amount of property and business, and exercising the same privileges

in Ohio will not be the same; and the charge imposed on one may be many times that made against another. . . . Again, compare two corporations organized in a sister state having the same number of authorized nonpar value shares, one having property and business of little value, all in Ohio, and the other having much more property and business, in that state, and also much property and business in other states. The act would require the former to pay five cents per share on all its shares, but would require the latter to pay a fee based only on the proportion of its shares representing its property owned and used and business transacted in Ohio.

"It is clear that the mere number of authorized nonpar value shares is not a reasonable basis for the classification of foreign corporations for the purpose of determining the amount of such annual fees. Such a classification is not based on anything having relation to the purpose for which it is made. (*Southern Ry. Co.* v. *Greene,* 216 U. S. 400, 417 [17 Ann. Cas. 1247, 54 L. Ed. 536, 30 Sup. Ct. Rep. 287, see, also, Rose's U. S. Notes]; *Royster Guano Co.* v. *Virginia,* 253 U. S. 412, 415 [64 L. Ed. 989, 40 Sup. Ct. Rep. 560, see, also, Rose's U. S. Notes Supp.].) The act has no tendency to produce equality; and it is of such a character that there is no reasonable presumption that substantial equality will result from its application. (*Martin* v. *District of Columbia,* 205 U. S. 135, 139 [51 L. Ed. 743, 27 Sup. Ct. Rep. 440]; *Gast Realty Co.* v. *Schneider Granite Co.,* 240 U. S. 55, 58 [60 L. Ed. 523, 36 Sup. Ct. Rep. 254]; *Kansas City Southern Ry. Co.* v. *Road Improvement District,* 256 U. S. 658, 660 [65 L. Ed. 1151, 41 Sup. Ct. Rep. 604].) The act violates the equal protection clause of the Fourteenth Amendment." (*Airway etc. Corp.* v. *Day, supra,* pp. 82–85.)

"It must now be regarded as settled that a state may not burden interstate commerce or tax property beyond her borders under the guise of regulating or taxing intrastate business. So to burden interstate commerce is prohibited by the commerce clause; and the fourteenth amendment does not permit taxation of property beyond the state's jurisdiction. The amount demanded is unimportant when there is no legitimate basis for the tax. So far as the language of *Baltic Min. Co.* v. *Massachusetts,* 231 U. S. 68, 87 [58 L. Ed.

127, 134, 34 Sup. Ct. Rep. 15], tends to support a different view, it conflicts with conclusions reached in later opinions, and is now definitely disapproved." (*Alpha Portland Cement Co.* v. *Massachusetts,* 268 U. S. 203, 218 [44 A. L. R. 1219, 69 L. Ed. 916, 45 Sup. Ct. Rep. 477].)

These decisions re-align the court in accord with such previous decisions as *Western Union Tel. Co.* v. *Kansas,* 216 U. S. 1 [54 L. Ed. 355, 30 Sup. Ct. Rep. 190], *Pullman Co.* v. *Kansas,* 216 U. S. 56 [54 L. Ed. 378, 30 Sup. Ct. Rep. 232], *Ludwig* v. *Western Union Tel. Co.,* 216 U. S. 146 [54 L. Ed. 423, 30 Sup. Ct. Rep. 280], *Atchison etc. Ry. Co.* v. *O'Connor,* 223 U. S. 280 [Ann. Cas. 1913C, 1050, 56 L. Ed. 436, 32 Sup. Ct. Rep. 216], *International Text Book Co.* v. *Pigg,* 217 U. S. 91 [18 Ann. Cas. 1103, 27 L. R. A. (N. S.) 493, 54 L. Ed. 678, 30 Sup. Ct. Rep. 481], *Bucks Stove & Range Co.* v. *Vickers,* 226 U. S. 205 [57 L. Ed. 189, 33 Sup. Ct. Rep. 41], and produce harmony between those decisions and the following cases: *Looney* v. *Crane Co.,* 245 U. S. 178 [62 L. Ed. 230, 38 Sup. Ct. Rep. 85], *International Paper Co.* v. *Massachusetts,* 246 U. S. 135 [Ann. Cas. 1918C, 617, 62 L. Ed. 624, 38 Sup. Ct. Rep. 292], *Airway etc. Corp.* v. *Day, supra,* and *Alpha Portland Cement Co.* v. *Massachusetts, supra.*

The so-called Baltic-Dental case (*Baltic Mining Co. & S. S. White Mfg. Co.* v. *Commonwealth of Massachusetts,* 231 U. S. 68 [58 L. Ed. 127, 34 Sup. Ct. Rep. 15]), has in some respects been distinguished in other respects definitely overruled. See *Looney* v. *Crane Co., supra,* and *Alpha Portland Cement Co.* v. *Massachusetts, supra.*

[2] The effect of this re-alignment of the supreme court of the United States is to necessarily overthrow our holding in the case of *Pick & Co.* v. *Jordan,* 169 Cal. 1 [Ann. Cas. 1916C, 1237, 145 Pac. 506], and to revive the doctrine announced in the case of *Mulford* v. *Curry,* 163 Cal. 276 [125 Pac. 236]. We accord to the legislature a sincere effort to frame a law that was just so far as the amount of the charges to foreign corporations desiring to enter our state for intrastate business was concerned, and the legislature, no doubt, acted in perfect good faith, relying upon the validity of the decision in the case of *Pick & Co.* v. *Jordan, supra,* but in view of the holding of the United States su-

preme court above announced, that a law on this subject in order to be valid must bear at least some relation to property owned and used and business carried on or proposed to be carried on within the state of California, we must bow to the supremacy of the federal constitution in this matter as interpreted by the highest court of our country.

[3] There is no substance in the argument of respondent that a different principle may apply in the case of filing fees graded on authorized capital than in the case of a privilege or excise tax based upon authorized capital. The effect upon interstate commerce and upon equal protection of the law to persons in the several states is the test, and neither the name nor the aim of the state tax can suffice to prevent consideration by the supreme court of the United States of the necessary effect and consequences of the state statute.

[4] Respondent contends also that the tax was simply measured by the standard and, being an excise or privilege tax, there can be no objection to using the authorized capital as a foot rule for such measurement. This point is abundantly answered by the above authorities and recently the supreme court of the United States specially dealt with the question as follows:

"One ground on which the state court put its decision was that, in taxing the transfer of the property which the decedent owned in Pennsylvania, it was admissible to take as a basis for computing the tax the combined value of that property and the property in New York and Massachusetts. Of course, this was but the equivalent of saying that it was admissible to measure the tax by a standard which took no account of the distinction between what the state had power to tax and what it had no power to tax, and which necessarily operated to make the amount of the tax just what it would have been had the state's power included what was excluded by the Constitution. This ground, in our opinion, is not tenable. It would open the way for easily doing indirectly what is forbidden to be done directly, and would render important constitutional limitations of no avail. If Pennsylvania could tax according to such a standard, other states could. It would mean, as applied to the Frick estate, that Pennsylvania, New York and Massachusetts could each impose a tax based on the value of the entire estate, although severally having jurisdiction of only parts of it. Without

question each state had power to tax the transfer of so much of the estate as was under its jurisdiction, and also had some discretion in respect of the rate; but none could use that power and discretion in accomplishing an unconstitutional end, such as indirectly taxing the transfer of the part of the estate which was under the exclusive jurisdiction of others. (Citing many cases.)'' (*Frick* v. *Commonwealth of Pennsylvania,* 268 U. S. 473 [42 A. L. R. 316, 69 L. Ed. 1058, 45 Sup. Ct. Rep. 603, 606].)

There are other attacks made by petitioner and by *amici curiae* under the same provisions of the constitution of the United States upon the statute in question, but the above holding makes it unnecessary to further pursue this branch of the subject.

[5] There is likewise no merit to the contention of respondent that mandate will not lie because if this provision is invalid the whole act must fall with it. We think the provision in question and the provisions dependent thereon are and each of them is clearly severable from the remainder of the act and that no injury will be done to the integrity of the other provisions by the holding here made. *Mandamus* is, therefore, the proper remedy. (*Mulford & Co.* v. *Curry, supra; Pick & Co.* v. *Jordan, supra; Melville Clark Piano Co.* v. *Jordan,* 169 Cal. 804 [145 Pac. 516].)

We find nothing in the cases of *Schwab* (*Oceanic Steamship Co.*) v. *Richardson,* 188 Cal. 27 [204 Pac. 396], 263 U. S. 88 [68 L. Ed. 183, 44 Sup. Ct. Rep. 60], and *The Pullman Company* v. *Richardson,* 185 Cal. 484 [197 Pac. 346], 261 U. S. 330 [67 L. Ed. 682, 43 Sup. Ct. Rep. 366], which is opposed to the views above announced.

Let the writ of mandate issue as prayed for.

Shenk, J., Richards, J., Waste, C. J., Curtis, J., Seawell, J., and Langdon, J., concurred.