[Civ. No. 3244.   Third Appellate District.—July 9, 1927.]

FLEET F. COPP, Respondent, v. JAMES MULCAHY, Appellant.

A. H. Carpenter for Appellant.

Berry & Watson for Respondent.

HART, J.—This action is by plaintiff to recover on two several promissory notes. The complaint is in two counts, in the first of which it is alleged that defendant, on the eleventh day of July, 1924, made, executed, and delivered to plaintiff his promissory note for the sum of $297, payable three months after date, together with interest thereon at the rate of seven per cent per annum. Said note is set out *in haec verba* in said count. The second count or cause of action is founded on a note for the sum of $58, dated July 19, 1924, and payable, with interest at the rate of seven per cent per annum, on or before three months after date. Said note is also set out in full in the complaint. Each of said notes provided for the payment by the maker (defendant herein) of reasonable attorney's fees, in case action was instituted to enforce the payment thereof. The complaint alleges that no part of the principal sums, nor any interest accruing thereon, has been paid, and that the said notes "are now due, owing and unpaid," and that, as to the first cause of action, the sum of $75 is a reasonable amount to be awarded as attorney's fees, and that, as to the second cause of action, the sum of $25 is a reasonable amount to be allowed for such fees.

The defense interposed by defendant may the better be understood by reciting a brief history of the transactions culminating in the making and delivery of the notes in suit by defendant to the plaintiff before referring to the allegations of the answer. This statement may be taken from the findings, from which it appears that for some time prior to the date of the making of said notes, a corporation known as the New England-California Corporation, organized under the laws of the state of Massachusetts and having its principal place of business at Worcester, Massachusetts, filed with the Secretary of State of California a certified copy of its articles of incorporation and other papers required to be so filed by foreign corporations desiring to transact intrastate business within this state (Stats. 1917, pp. 371–377); that thereafter said corporation proceeded to carry on its business in this state, with the plaintiff herein as the managing agent thereof; that during the period of time in which it thus transacted business in California the defendant rented from it a certain number of acres of land in San Joaquin County at a certain specified rental and also from

time to time purchased hay from it; that after these transactions, and on the third day of March, 1923, the right of said corporation to transact business in California was (officially declared to be) forfeited because of its failure to pay the annual tax which the state attempted to exact from foreign corporations. as one of the conditions upon which they are permitted to transact intrastate business therein. It further appears from the findings that one George M. Wright was at all times the president of said New England-California Corporation and resided at said city of Worcester, Massachusetts; that, previous to the execution of the notes in controversy, said corporation was indebted to the plaintiff for salary as managing agent thereof in a sum in excess of $2,000 and that after the right of the corporation to transact business in California was (officially declared to be) forfeited for the reason above stated, the plaintiff was duly authorized by said George M. Wright, the president of said corporation, to collect and apply certain debts due said corporation from certain persons in California, including the indebtedness of defendant to said corporation, upon and in satisfaction of the moneys due plaintiff from the corporation on account of the salary due him.

The answer alleges that the defendant was not indebted to the plaintiff on account of the notes set out in the complaint or on any other account and that the defendant did not knowingly or intentionally make, execute, or deliver to plaintiff either of the promissory notes set out in the complaint; that (referring to the first count of the complaint), in the years 1922 and 1923, the defendant rented from said corporation certain real property belonging to it and situated in the county of San Joaquin, for the sum of $150 per year, which was payable at the end of each year thereof; that "on the 11th day of July, 1924, the plaintiff, who was then and there acting as a servant of said corporation falsely and fraudulently represented and stated to defendant that he (defendant) was then indebted to said corporation in the sum of $297, for and on account of the rental of said corporation's real property, and that said corporation was then demanding the said rental money from him, and that he had prepared the said promissory note in the amount specified in said note, and had made the same payable to the said corporation in order that it might be for-

warded to it, and thereby save the expense of a suit at law for the collection of said rent; when in truth and in fact the defendant was not indebted to either plaintiff or the said corporation in the said sum of $297, or any other or different sum, on account of the rental of said real property, or for any other matter or thing whatsoever, and that the said corporation was not then demanding, and never had demanded, the money from the plaintiff for said rental, and the latter had not made the said promissory note payable to the said corporation, and the said note was not asked for or secured for the purpose of being forwarded to said corporation, or for the purpose of saving the expense of a lawsuit; and that the plaintiff then and there well knew that defendant was not indebted to said corporation or to him in the said sum of $297, or any other or different sum, on account of the said rental or any other matter or thing whatever, and that said corporation was not then demanding, and never had demanded the said rental money from plaintiff (which had already been paid as aforesaid), and that plaintiff had not made said promissory note payable to said corporation but to himself, and that the same was not asked for or secured from defendant for the purpose of being forwarded to said corporation, or for the purpose of saving the expense of a lawsuit; and that plaintiff made each and all of the foregoing false and fraudulent representations and statements to the defendant for the purpose of inducing and forcing him to unknowingly and unintentionally give said promissory note to him individually and not to said corporation, and thereby of defrauding defendant out of the amount thereof.

"That defendant believed and relied upon each and all of the aforesaid false and fraudulent representations and statements, and in consequence thereof and of his belief that the note was made payable to said corporation, he signed said promissory note, and not otherwise.

"That defendant never had any personal dealings or business with plaintiff, and never at any time owed him money or other obligation; and that for the purpose of securing defendant's signature to said note to himself, the plaintiff falsely and fraudulently represented and stated to defendant at the time said note was executed, that it was made payable to the said corporation; and that defendant then

believed it was so written, and now believes that it was not then made payable to plaintiff, and that the payee's name was left blank, and that plaintiff afterward fraudulently filled said blank by writing his own name therein, for the purpose of defrauding defendant out of the amount thereof.''

The allegations of the answers replying to the second count of the complaint are substantially, if not precisely, the same as those contained in the answer responding to the first count and above herein set forth. Defendant filed a cross-complaint, in which it is alleged that the plaintiff (cross-defendant) is indebted to cross-plaintiff (defendant) on an open, mutual, and current account, in the sum of $450, ''for and on account of moneys loaned by him to said cross-defendant, at his special instance and request, which the said cross-defendant then and there promised and agreed to pay cross-plaintiff long prior to the commencement of this action, together with the interest to accrue thereon at the legal rate''; that said cross-defendant has not paid cross-plaintiff said sum of $450 or any part thereof, and that the same with interest, etc., is now due and owing from cross-plaintiff to the cross-defendant. The plaintiff answered the cross-complaint specifically denying each of its allegations.

The defendant, by leave of the court, filed an amendment to his answer, alleging that the corporation referred to ''was a foreign corporation created under the laws of the State of Massachusetts and which was licensed to do business in this State prior to the 3rd day of March, 1923, and which forfeited that said right in this State on that date by reason of its failure to pay its taxes theretofore due the State of California, and that in consequence thereof the aforesaid promissory notes are null and void.''

The court found, in addition to the findings from which is taken the general statement of the facts hereinabove given, that the defendant, at all times, well knew the relations existing between the plaintiff, the said New England-California Corporation, and said George M. Wright ''and acquiesced in and fully understood the circumstances under which said promissory notes were executed and also knew that said New England-California Corporation had forfeited its right to transact business within the State of California, by reason of the forfeiture of its charter within the State of California, as aforesaid, which forfeiture was and is at all times since

said 3rd day of March, 1923, a matter of public record within the State of California; that it is not true as alleged in the defendant's Answer herein that the plaintiff made any false or fraudulent representations to the defendant whatsoever with reference to said promissory notes, and the Court finds that all matters set forth in said Answer not expressly covered by the foregoing Findings are untrue."

It is further found that "each of the allegations of the cross-complaint was, and is, untrue; that no evidence has been introduced showing, or tending to show, that within four years previous to the commencement of this action, or at all, the cross-defendant, plaintiff herein, has been, or ever was, indebted to cross-plaintiff, defendant herein, upon an open, mutual and current account, or any account, in the sum of Four Hundred Fifty Dollars ($450.00), or any sum, for or on account of moneys loaned to him by said cross-plaintiff, or at all."

Plaintiff, upon the findings and the conclusions of law following therefrom, was awarded judgment in the total sum of $510, which includes the aggregate of the sums for which, respectively, the notes counted upon were given, together with the interest accruing thereon.

The defendant appeals from the judgment in accordance with the provisions of section 953a of the Code of Civil Procedure.

It is admitted that, prior to the making and delivery of the notes in question by defendant to plaintiff, the New England-California Corporation failed to pay the annual tax to the state, as required by the Statute of 1917, *supra,* and had not paid such tax at the time of the commencement of this action and that the Secretary of State of said state duly and regularly made a record in his office of that fact.

The point primarily made by the defendant for a reversal of the judgment is that the forfeiture of the right of said corporation to transact business in California "disqualified it from collecting any claim or account by suit or otherwise." It is hence contended that "if the corporation could not legally make such collection or maintain such action against the defendant herein, its agent or servant could have no greater or better right than it had." There are other points urged by the defendant. One of these is that the corporation "never gave plaintiff any assignment of the

claim, and never at any time authorized him to take notes to himself for any of its demands against its debtors." This last stated proposition involves the question whether or not a verbal assignment by the corporation to plaintiff of the debts of which the promissory notes in suit purport to be evidence is legal or valid.

Section 3 of the Statutes of 1917 regulating the right of corporations to transact business in the state of California contains precisely the same provisions as are contained in the corresponding section of the act of 1915, and acts amendatory thereof and supplementary thereto, passed by the legislature subsequent to its session of 1915 and relating to the same subject. (See Deering's General Laws, 1923, p. 548.) Said section, after providing that a foreign corporation shall file with the Secretary of State an authenticated copy of its charter, together with the payment of a specified filing fee, and also filing an affidavit disclosing its authorized capital stock on January 1st of the current year, etc., provides as follows:

"Sec. 3. Except those corporations hereinafter specified, every corporation incorporated under the laws of this state, and every corporation incorporated under the laws of any other state, territory, or foreign country now doing intrastate business within this state, or which shall hereafter engage in intrastate business in this state, shall procure annually from the secretary of state a license authorizing the transaction of such business in this state, and pay therefor the license tax prescribed herein.

"For the purpose of measuring said tax the secretary of state shall examine all articles of incorporation and all documents on file in his office relating to an increase or decrease in the authorized capital stock of corporations which are subject to said tax, and determine the amount due from each corporation by the following rule." (Following which is the prescribed amount of the tax, which amount is graduated according to or upon the basis of the authorized capital stock of such corporation.)

In the very recent case of *Perkins Mfg. Co.* v. *Jordan,* 200 Cal. 667 [254 Pac. 551], the supreme court had before it the above-named section, or the same section as it appears in the Statute of 1917, *supra,* in a proceeding in mandate to compel the Secretary of State, notwithstanding that the

corporation, petitioner, refused to pay the annual license tax purporting to be required by the statute in such case, to accept and file a copy of the charter of said corporation tendered, with other documents mentioned in said section, to said officer by the petitioner for filing in his office. The ground upon which the petitioner refused to pay the annual license tax upon presenting a certified copy of its charter and other documents for filing with the state officer named was that the provision of section 3 of the statute in question, attempting to fix a graduated license or excise tax upon the basis of the amount of the authorized capital stock of a foreign corporation (meaning a corporation of a sister state) is invalid, in that at least the necessary effect of its operation would be an unlawful interference with interstate commerce, the regulation of which is solely the function of Congress, and, further, would involve the attempted performance of an act inconsistent with the due process clause of the federal constitution, since the imposition of such tax would be upon the property of a foreign corporation, when neither the corporation nor the property taxed was located or used within the borders of the state of California. Our supreme court, in that case, in a well-considered opinion by Mr. Justice Preston, sustained the contentions of the petitioner therein and ordered the writ of mandate, as prayed for, to be issued. Obviously, the effect of that decision was to set at naught as illegal and void section 3 of the act of 1915 (Stats. 1915, p. 424), and, consequently, the same section of the act of 1917. It is not necessary to present herein excerpts from the opinion of Judge Preston. It is enough to say, as already enough has been said to indicate, that under that decision, and the existing statute as it is thereby interpreted, it is at the present time obligatory upon the Secretary of State to file, upon application therefor, the certified copy of the charter and any other documents required by the Statute of 1917 to be filed by any foreign corporation desiring and intending to transact intrastate business within the limits of the state of California, without the payment by such corporation of the annual license tax which said statute purported or attempted to exact from foreign corporations as one of the conditions upon which their right to transact intrastate business in California was made to depend. It is manifest that, under the decision

in the case named, the attempted forfeiture by the state of California of the right of the New England-California Corporation to transact intrastate business within its borders because of the failure of said corporation to pay its annual license tax according to the terms of section 3 of the Statute of 1917 is wholly nugatory and void, and that said corporation, if it has complied with the other conditions prescribed by said statute and which are necessary to be observed and which are not within or subject to the objections sustained in *Perkins Mfg. Co.* v. *Jordan* (as to which matter the record makes no disclosure), was, when the transactions herein concerned took place, entitled to enjoy and exercise, in this state, any rights, privileges, or perform any corporate acts within the scope of its powers as a corporation. It of necessity follows that, if for no other reason than that furnished by the result reached in the case named, the point made by defendant that the corporation involved herein had been rendered legally incompetent to assign to plaintiff or through him collect any claims accruing to it before the asserted forfeiture of its right to do intrastate business in California is wholly without a legal foundation for its support. We are not to be understood as expressing an opinion on the question whether or not the effect of a forfeiture, as prescribed by the statute, of a foreign corporation's right to do intrastate business in California, for any reason for which the right of such a corporation to transact business in this state might, under the statute, be forfeited, would be to debar it of the right, subsequent to such forfeiture, of enforcing in the courts of this state the payment of any debts or claims accruing to it prior to such forfeiture.

The findings, other than that purporting to find that the New England-California Corporation had forfeited its right to do business in the state of California by reason of the nonpayment of its taxes, are afforded sufficient evidentiary support. The plaintiff testified that from November, 1919, to the time (March 3, 1923) of the alleged forfeiture of the right of said corporation to transact business in California, he was in the employ of said corporation as an expert and manager; that at the time of the purported forfeiture the said corporation was indebted to him (plaintiff) in a sum approximating $6,000 for personal services rendered by him

for the corporation as such expert and manager; that, on the date of the alleged forfeiture, there were owing to the corporation certain debts, among which was the debt of the defendant to the corporation and which latter was evidenced by the notes in suit; that, in the year 1924, and prior to the time that said notes were executed and delivered by defendant to plaintiff, the latter held a conversation with the former, in the course of which the plaintiff stated to the defendant that the corporation was indebted to him (plaintiff) in a large sum of money for the services theretofore performed by him for the corporation; that defendant then said to plaintiff that he knew the corporation was indebted to him (plaintiff); that, subsequently and before the making and the delivery of the notes in controversy, he (plaintiff) went to the state of Massachusetts, and discussed with George M. Wright, president of the corporation, the situation in California with respect to the affairs of the corporation and also the matter of the indebtedness of the corporation to plaintiff on account of wages or salary due the latter from the former; that said Wright, as such president, verbally vested plaintiff with full authority to superintend and wind up the affairs of the corporation in California, and to that end collect the debts due the corporation, and pay such indebtedness as existed against the corporation in this state, including the indebtedness of the corporation to plaintiff for salary; that said Wright at that time verbally assigned to plaintiff the moneys due the corporation from defendant; that, on returning to California, he (plaintiff) called on the defendant and requested him to settle the amounts due from him to the corporation for hay purchased by the former from the latter and also for rent money, as explained in the findings; that he then told the defendant that the corporation, through its president, Mr. Wright, had assigned to him the moneys due from him (defendant) to the corporation and that the same were to be in satisfaction of the corporation's indebtedness to plaintiff; that the defendant again said that he knew the corporation was indebted to plaintiff and that the latter ought to have the money that he (defendant) owed the corporation—in fact, so plaintiff testified, the defendant then stated that he would rather pay plaintiff what he owed the corporation than to pay the corporation itself;

that plaintiff thereupon suggested that defendant give him in his (plaintiff's) name the promissory notes for the two several sums owing from defendant to the corporation, and that defendant thereupon made and delivered to the plaintiff and in his name the first of the notes, the latter having previously prepared it, and that some days later defendant executed and likewise delivered to plaintiff the second note, which is the basis of the second cause of action stated in the complaint. A letter dated at Worcester, Massachusetts, June 18, 1924, was addressed to plaintiff by the "New England-California Corporation, George M. Wright, agent," and in due course was received by plaintiff, in which it was stated: "Confirming our talk we hereby acknowledge that you are still in the employ of the New England California Corporation and are to carry on the work as Superintendent under the direction of their agent, George M. Wright, and that it is understood that you are to continue in the employ of the Company, as above stated, until either you or the Company indicate their desire to terminate the arrangement by writing."

The defendant testified that he was in possession of and used a tract of land consisting of twenty-one acres under a lease from the corporation during the years 1920, 1921, 1922, 1923, "and parts of the year 1924," said lease by its terms to expire with the expiration of the last-named year; that in the negotiations leading to the making of the lease, the plaintiff acted for and on behalf of the corporation; that during the term of the lease he "once in a while" bought hay from the corporation. He admitted that plaintiff, prior to the date of the making of the first of the notes in suit, told him of the corporation's indebtedness to him on account of salary or wages for personal services performed for the corporation. He testified that plaintiff stated that the notes were to be made to the corporation; that he agreed to give the notes on condition that threatened foreclosure proceedings against the property of the corporation which embraced the acreages under lease by him did not result in dispossessing him of the land demised to him before his fruit crops were gathered; that plaintiff replied that "it was only a matter of form that they wanted the notes, and they wasn't going to foreclose if I made the note to the New England Corporation." He added that,

after he made and delivered the notes, the "Stockton Savings and Loan Bank foreclosed and they put me off the property," and as a result he was prevented from gathering and so securing the benefit of his fruit crops growing thereon. Defendant stated that he did not examine either note before he signed it "to see who the note ran to," but, on cross-examination, admitted that, if he had known that the notes were to be made to the corporation, as he assumed they had been, he would have signed them, as he knew that he was indebted to the corporation in some amount.

There has now been given in substance all the testimony regarding the transactions resulting in the execution and delivery of the notes in suit to plaintiff. It is thus readily to be seen that there is evidence warranting the conclusion that the plaintiff was authorized to collect, either for himself as assignee or for the corporation as its agent, the moneys due the corporation from defendant and represented by the notes in suit. But, at all events, if it were necessary to admit that there is, as a proposition of law, any force to the defense, interposed by defendant to plaintiff's action, to the effect that the plaintiff falsely represented to him (defendant) that the corporation was made the payee of the notes and upon such representation alone he signed and executed the instruments, nevertheless the finding that such defense was or is unfounded in fact is fully sustained by the testimony of the plaintiff.

Although we have referred herein to the testimony of the defendant that he was wrongfully ousted from the premises by a Stockton bank as a result of some unexplained foreclosure proceeding involving the property under lease by the defendant, it should be stated that that testimony is of no importance whatever under the issues of the case, since the defendant has not claimed here nor asked for any affirmative relief by way of damages for his asserted wrongful eviction from the premises and asserted consequent loss of crops.

As to the allegations of the cross-complaint to the effect that the plaintiff (cross-defendant to said cross-complaint) was indebted to the defendant upon an open, mutual, and current account in the sum of $450, there was not, as the

court expressly found, any evidence whatever introduced in support thereof.

There was an attempt by defendant to show that he had paid the debts evidenced by the notes. Some checks given by defendant to the plaintiff for the corporation were introduced in evidence. These checks, however, were shown to have been for an indebtedness accruing in favor of the corporation from defendant prior to the time that the indebtedness evidenced by the notes was created. At any rate, the court was well within its discretion in so finding from the evidence upon that subject.

█ The objection to the rulings of the court permitting the plaintiff to prove by parol that the corporation assigned to him the claims it held against the defendant on the ground that such assignment is not valid or of any legal force because it was not reduced to writing is untenable. In this state, a thing or a chose in action, arising out of an obligation, may verbally or without a writing be transferred by assignment by the owner to another. (Civ. Code, secs. 954, 1052 and 1624; *Dingley* v. *McDonald*, 124 Cal. 90, 94 [56 Pac. 790].) █ And, if it is to be assumed that the verbal assignment by the corporation to plaintiff of the claims existing in favor of the corporation against the defendant was effectuated entirely in the state of Massachusetts, then the validity of the assignment may, under the circumstances of this case, be sustained upon the presumption, which obtains in this state, that, in the absence of proof that the law of a sister or foreign state upon any subject is different from our own law upon the same subject, the law of such sister or foreign state is the same as our law on such subject. (*O'Sullivan* v. *Griffith*, 153 Cal. 502 [95 Pac. 873, 96 Pac. 323]; *Wills* v. *Wills*, 166 Cal. 529, 532 [137 Pac. 249]; *McCormack* v. *McCormack*, 175 Cal. 292 [165 Pac. 930]; *Estate of Pusey*, 177 Cal. 367, 373, 374 [170 Pac. 846]; *Fox* v. *Mick*, 20 Cal. App. 599 [129 Pac. 972]; 5 Cal. Jur., pp. 430, 431, and cases named in the footnotes.) There was no evidence received, nor, indeed, any attempt to prove, in this case, that at the time the assignment in question here was made, the law of the state of Massachusetts regarding the requisites of a valid assignment of a chose in action was not the same as our law upon that subject. The presumption, therefore, is that,

as in this state so it is or was true in the state of Massachusetts, a thing in action may legally be transferred by assignment verbally by the owner to another or without committing such assignment to writing.

There are no other points requiring notice herein.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 6, 1927.